GRANT KING *v.* PATRICIA POLLARD, ADMINISTRATRIX OF THE ESTATE OF ART POLLARD, DECEASED.

[No. 2-1172A101. Filed May 23, 1974.]

*Michael T. Dugan, II, George T. Popcheff, Poore, Popcheff, Wurster, Dugan and Burke,* of Indianapolis, for appellant.

*Forrest Bowman, Jr., Martz, Bowman & Kammen,* of Indianapolis, for appellee.

## CASE SUMMARY

BUCHANAN, J.—This is an appeal by Defendant-Appellant Grant King (King) from a $3,025.00 judgment in favor of Plaintiff-Appellee Art Pollard (Pollard)[1] and adverse to his counterclaim arising out of a joint race car venture, King claiming lack of jurisdiction in the Marion County Municipal Court and that the judgment of the trial court was contrary to law and not supported by the evidence.

We affirm.

## FACTS

The facts and evidence most favorable to Pollard and the judgment of the trial court are:

On August 27, 1969, Pollard, a race car driver, and King,

---

1. Pollard died subsequent to filing this appeal and Patricia Pollard as Administratrix of his estate has been substituted in his stead.

a mechanic and car builder, jointly acquired a dirt track race car.

It was agreed Pollard would drive the car and King would prepare and maintain it in his shop, the car's expenses to be applied against earned prize money and any net profits to be shared equally by them.

Payment to Pollard of a driver's fee (40% of prize money) was to be postponed until funds were available.

During the month that followed the purchase, the car was raced on two occasions and earned a total of $1,508.00 in winnings. Also during this period, the car underwent various modifications and repairs. Some parts were also installed from time to time, and certain travel and transportation expenses were incurred.

In August of 1970, King sold the car for $7,500.00. When Pollard requested his one-half share of the proceeds, King refused.

On March 20, 1971, Pollard brought this action in Marion County Municipal Court against King, seeking $4,353.20 as payment for his share in the sale proceeds, plus the driver's fee.

In response, King filed an answer, a counterclaim for $9,589.21, and an amended answer . . . and no other pleadings. Subsequent answers by King to interrogatories indicated that the *total* amount of all expenses claimed by King in connection with the race car amounted to approximately $13,000.00, of which one-half, or approximately $6,500.00, would presumably be charged against Pollard.

On July 7, 1972, the date of trial, King's counsel orally moved to transfer the case to the Superior Court of Marion County, claiming the trial court lacked jurisdiction over King's counterclaim:

KING'S COUNSEL: "Your Honor, we move that this cause be transferred to a Superior Court in view of the fact that the counterclaim exceeds the jurisdic-

tional limits of this Court. We had a counterclaim for approximately $12,000.00, and I feel that if proceeding on this matter, the Court would find against the Plaintiff in his original complaint, then I don't think the Court would have jurisdiction to enter a judgment in excess of $10,000.00 on the Defendant's cross-complaint."

The record discloses no counterclaim filed by King other than the one for $9,589.21, and it was not amended or leave sought to amend.

The trial court denied King's Motion to Transfer.

King testified to the nature and amounts of numerous items of expense substantially as set out in his previous answers to interrogatories.

Rebuttal evidence was produced by Pollard in detail as to virtually all the items of expense claimed by King. It consisted of lengthy testimony by Pollard and two race car mechanics (Bond and Brown) who worked on the car during the time it was jointly owned by the parties. Summarized, this evidence (along with reasonable inferences to be adduced therefrom) tended to establish:

1. Much of the labor was not in fact performed on the car;
2. Some expenses relating to parts and labor were paid by sponsors;
3. Many parts were never installed or purchased by King for the car;
4. Grossly exorbitant prices were claimed by King for parts and labor that did relate to the car;
5. Some parts were loaned to King and were returned before the car was sold;
6. Some parts came from King's stock and were removed from the car and returned to stock before the sale;
7. Travel and transportation expenses were excessive and not authorized by Pollard; in addition, such expenses were at least partly allocable to another race car which was solely owned by King.

At the close of the evidence, the trial court entered judgment in favor of Pollard in the sum of $3,025.00. Neither party requested findings of facts and conclusions of law.

King appeals.

### ISSUES

ISSUE ONE.      Did the Marion County Municipal Court lack jurisdiction to decide the controversy because King's counterclaim exceeded the jurisdictional limit ($10,-000.00) of that court?

ISSUE TWO.      Is the judgment contrary to law, not sustained by sufficient evidence, or excessive?

ISSUE THREE.      Should this court assess ten per cent damages against King pursuant to Rule AP 15(F)?

As to ISSUE ONE, King's only basis for the court's lack of jurisdiction is that his counterclaim was for $12,000.00 (or $12,889.25), or that he "amended" his counterclaim based on the answers to interrogatories propounded prior to trial.

Pollard answers that this is a false issue as the record reveals only one counterclaim filed by King in the amount of $9,589.21, which was never amended.

As to ISSUE TWO, King argues that the judgment in favor of Pollard bore no reasonable relation to the evidence and that the evidence only supported a judgment on his counterclaim.

Pollard contends that because the evidence was in sharp conflict as to the extent and amount of expenses incurred, the decision of the trial court cannot be disturbed as contrary to law and further that there was sufficient evidence to support a judgment on Pollard's Complaint.

As to ISSUE THREE, Pollard requests an assessment of ten per cent damages against King, claiming that this appeal is totally without merit and was perfected only for purposes of delay.

To this charge, King makes no reply.

## DECISION

ISSUE ONE.

CONCLUSION—It is our opinion that there was no counterclaim in excess of $10,000.00 before the Marion County Municipal Court raising a question as to its jurisdiction to adjudicate the controversy.

Repeatedly throughout these proceedings (before the trial court, in the Motion to Correct Errors,[2] and in his brief),[3] King makes the bald assertion that his counterclaim was for $12,000.00 (or $12,889.25, or approximately $12,000.00). The record only reveals a counterclaim of $9,589.21, which was never amended nor leave sought to amend pursuant to Rule TR. 15. Nor could it be considered to be amended to conform to and reflect issues not raised by the pleadings (Rule TR. 15(B)).

Pollard describes King's attempt to raise a jurisdictional issue based on the existence of a counterclaim in excess of $12,000.00:

"* * * there is no jurisdictional question in this record. In order to attempt to create such an issue, the appellant has simply misstated the record."

On King's behalf it should be said that he apparently believed his second amended answers to Pollard's interrogatories had the effect of amending the demand of his counterclaim . . . although no explanation is offered as to his obvious failure to comply with Rule TR. 15. Even were the answers to interrogatories accepted as creating expenses in the race car's operation in excess of $12,000.00, that figure is subject to reduction by one half according to King's own theory of the case.

---

2. The Motion to Correct Errors:
   "Defendant's counter-claim was for $12,889.25."
3. The Brief:
   "At trial the defendant amended his Counter-Claim to $12,000.00 based on answer to interrogatories propounded prior to trial."
   * * *
   "Likewise, in the instant cause the court was presented with an action, the defendants counter-claim, which exceeded the jurisdictional limit of $10,000.00 by $2000.00."

King's good faith statement of the record hangs, like the Sword of Damocles, by a single hair.

Recently our Supreme Court expressed its disapproval of misstatements of the record:

> "DR 7-102(A)(5) of the *Code of Professional Responsibility* states that: 'In his representation of a client, a lawyer shall not: knowingly make a false statement of law or fact.' *The Court is entitled to a fair statement of the facts from attorneys on both sides, not an exaggerated, self-serving version of the facts or an omission of crucial facts.* When the Court finds that it can not rely upon the statement of a lawyer, *the lawyer has lost his effectiveness with the Court and has therefore, in fact, injured his client.*" (Emphasis supplied.) *Cooper* v. *State* (1974), 261 Ind. 659, 309 N.E.2d 807.

Practitioners should realize that we are in a new era as to the permissible limits of partisan advocacy. Tactics which serve merely to gratify a client's desire for revenge, and not his legitimate interest in protecting and vindicating what he reasonabbly and sincerely contends are his rights, are no longer permissible. But also courts must be wary of hastily judging the motives of counsel. The rights and liberties of litigants would be in serious jeopardy were lawyers to become timid.

While ardent advocacy is desirable, it must be restrained by a fair statement of the record.

ISSUE TWO.

CONCLUSION—It is our opinion that the judgment was not contrary to law and was supported by sufficient evidence.

A significant part of the 459 pages of the record in this case consists of the testimony of Pollard and two mechanics (Bond and Brown) challenging most of the expense items claimed by Pollard. Both parties admit the evidence is in conflict. King had the burden of proof as to his counter-claim of $9,589.21 and so appeals from a negative judgment. Obviously the judgment cannot be contrary to law. *Pokraka* v. *Lummus Co.* (1951), 230 Ind. 523, 104 N.E.2d 669; *Hays*

v. *Hartfield LP Gas Co.* (1974), 159 Ind. App. 297, 306 N.E.2d 373; *Ver Hulst* v. *Hoffman* (1972), 153 Ind. App. 64, 286 N.E.2d 214; *Senst* v. *Bradley* (1971), 150 Ind. App. 113, 275 N.E.2d 573; *Barton* v. *Mirich* (1971), 149 Ind. App. 395, 273 N.E.2d 115.

Despite King's self-serving interpretation of the evidence, there is more than sufficient evidence to support the judgment and a rational basis therefor. He weighs the evidence in vain. We will not.

ISSUE THREE.

CONCLUSION—Considering past practice and all aspects of this appeal, damages should not be assessed against King pursuant to Rule AP. 15(F).

Pollard urges us to assess damages against King on the ground this is a bad faith appeal.

The discretionary power in this and the Supreme Court to assess damages against an appellant is contained in Rule AP. 15(F):

> "DAMAGES AGAINST APPELLANT. If the court on appeal affirms the judgment, damages may be assessed in favor of the appellee not exceeding ten per cent (10%) upon the judgment, in money judgments, and in other cases in the discretion of the court; and the court shall remand such cause for execution."

The most recent interpretation by the Indiana Supreme Court of Rule AP. 15(F) appears in *Annee* v. *State* (1971), 256 Ind. 686, 274 N.E.2d 260 (on rehearing):

> "The damages of ten percent (10%) allowed under AP. 15(F) are *discretionary* with this Court and we feel they *should not be issued without a strong showing of bad faith* on the part of the [appellant]." (Emphasis supplied.)

Cases, particularly recent ones on this subject, are not numerous. In 1972 this court summarized the cases in this manner:

> "Our Supreme Court has held that such a discretionary award of damages is proper where an appeal is frivolous,

or without substance or merit. *Marks v. Bremmer* (1917), 186 Ind. 434, 116 N.E. 738; *Bradford Homes, Inc. v. Long* (1942), 221 Ind. 309, 47 N.E.2d 609; *Kroeger Laundry & Dry Cleaners, Inc. v. Williams* (1942), 221 Ind. 299, 47 N.E.2d 612. Likewise, this court held in *Vandalia R. Co. v. Walsh* (1909), 44 Ind. App. 297, 89 N.E. 320, that when an appeal is taken only to harass or delay the appellee, 'thus presenting an illustration of vexatious litigation, that crowds our courts to the detriment of meritorious actions, and which should not go unrebuked,' a penalty of ten per cent will be assessed against the appellant." *Krick* v. *Farmers & Merchants Bank of Boswell* (1972), 151 Ind. App. 7 at 19, 279 N.E.2d 254 at 261.

King's jurisdictional argument (ISSUE ONE) is constructed on a nonexistent counterclaim in excess of $10,000.00 which tended to mislead this court and the trial court. It is a false issue.

However, it is incumbent upon us to examine the appeal as a whole if we are to fairly exercise our discretion.

In ISSUE TWO King engages in the all too common practice of retrying his case on appeal. His position is devoid of any merit, but probably no more so than other appellants claiming insufficiency of the evidence or that the judgment is contrary to law . . . and they have thus far escaped the sanction of Rule AP. 15(F). *See, e.g., Kourlias* v. *Hawkins* (1972), 153 Ind. App. 411, 287 N.E.2d 764.

This appeal is from a $3,025.00 judgment of the Marion County Municipal Court, which even a casual reading of the record indicates was supported by substantial evidence by one of the parties and two disinterested witnesses, coupled with an obviously false jurisdictional issue. King as an appellant thus totters on the brink of effecting a bad faith appeal requiring the imposition of damages.

In view of the previous reluctance of the courts of appeal of this state to assess damages in appeals involving alleged insufficiency of evidence, damages will not be assessed in this case. But this is not to say that such brinkmanship will receive the same treatment henceforth.

The judgment of the trial court is affirmed.

White, J. and Lowdermilk, J. (by designation) concur.

NOTE.—Reported at 311 N.E.2d 454.